IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No.   CR 1:22-01239-001 KWR |
| | § | |
| MARTIN MARTINEZ, | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT MARTIN MARTINEZ'S
SENTENCING MEMORANDUM, MOTION FOR A VARIANCE,
AND REQUEST FOR A SENTENCE OF PROBATION**

Martin Martinez is a young man with a very bright future. Since he overcame his addiction to fentanyl in early 2022, he has worked at a Home Depot in Albuquerque. He began there as an entry level employee and has since risen in the ranks to become a supervisor in the Plumbing department. He has demonstrated to Home Depot that he is trustworthy and hard working. This is who he is and who he plans to be in the future.

What he has never wanted to be was a drug addict and someone who would help someone buy a gun to continue his fentanyl habit. Unfortunately, that is what happened to him. And it is why he is facing charges in federal court.

1

What began that sad saga in his life was being introduced to fentanyl while working as a dish washer at the Melting Pot restaurant. A co-worker there introduced him to fentanyl, and it quickly and maliciously took over his life. Soon he was spending all of his money on fentanyl. He soon found that fentanyl is a habit that consumes more and more, and he needed more money to feed his ever-increasing cravings.

Withdrawal from opioids is known to be an excruciating process, but it is perhaps difficult to conceive exactly how it is experienced by the addict, for someone who has never personally experienced it. Doctor Andrew Kolodny, an expert in opioids and opioid addiction, describes it as activating the very primal areas of one's brain responsible for ensuring survival: "Your brain is responding as if there's a lion in the jungle ready to tear you to pieces."[1]

This was Mr. Martinez's experience. And to fight off the fear of that lion in the jungle, Mr. Martinez did things to buy drugs that he deeply regrets. One day he was approached by someone he knew and they asked him to help them buy a gun. Mr. Martinez knew that they were not allowed to buy a gun. And he knew that buying a gun for someone was illegal. But this person promised him

---

1  Glauser, Wendy. "The doctor who took on big pharma to stem the US opioid epidemic." *New Scientist*, 10 January 2017, https://www.newscientist.com/article/mg23731601-500-the-doctor-who-took-on-big-pharma-to-stem-the-us-opioid-epidemic/, Accessed 16 January 2017.

fentanyl in exchange. Mr. Martinez deeply regrets his actions and deeply regrets that he was so addicted to a fentanyl that he committed a crime to keep feeding that addiction.

This is not the kind of person Mr. Martinez was raised to be, and it is not the person that he is committed to being in the future. Mr. Martinez was born in Albuquerque and raised by his parents. His parents are hard-working, strong and committed parents who are dedicated to Martin and his brothers. Martin spends almost all of his time, when he is not working, with his family. With his brothers, nephews and nieces, he watches movies, goes fishing, and plays video games. Mr. Martinez does not have any children of his own and is dedicated to his nephews and nieces as few others are. He hikes and fishes with them, and spends as much time with them as he can.

Mr. Martinez has no criminal history, a fact that speaks to the completely aberrant nature of this conduct. Because of this, he has never before served a custodial sentence. The absence of a prior custodial sentence increases substantially the deterrent effect of a sentence. As one court has stated, "a lesser period of imprisonment is required to deter a defendant not previously subject to

lengthy incarceration."[1] This is true in Mr. Martinez's case. Having never spent time in custody prior to this case, less time is necessary to accomplish the purposes of sentencing. *See United States v. Cull*, 446 F. Supp. 2d 961 (E.D. Wis. 2006) (finding a variance appropriate where a defendant "had never been confined before, so this period was sufficient to impress upon him the seriousness of the offense and to deter others under similar circumstances").

Such exemplary performance on pretrial release demonstrates that he is unlikely to re-offend and that rehabilitation will be best served by a period of supervision. *See United States v. Munoz-Nava*, 524 F.3d 1137, 1148-49 (10th Cir. 2008) (upholding the district court's decision to credit the defendant's performance on pretrial supervision, even in light of prior uncharged drug distribution, where the defendant's "behavior while on a year-and-a-half pretrial release" was "exemplary" which shows defendant is unlikely to reoffend).

Mr. Martinez's request for a sentence of supervised release will also impose punishment that is sufficient, but not greater than necessary to accomplish the purposes of sentence. Supervision is a form of punishment. And while it is not as severe as a custodial sentence, it "substantially restrict[s] the

---

[1] *United States v. Qualls*, 373 F. Supp. 2d 873, 877 (E.D. Wisc. 2005).

liberty of a defendant." *Id.* at 1149. The Supreme Court has noted that while "custodial sentences are qualitatively more severe than probationary sentences of equivalent terms" defendants on probation or supervised release "are nonetheless subject to several standard conditions that substantially restrict their liberty." *Gall v. United States*, 552 U.S. 38, 48 (2007). Among those restrictions, those on supervision "may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking." *Id.*

A sentence of supervised release will promote Mr. Martinez's rehabilitation and will allow him to continue in his job. *See United States v. Sayad*, 589 F.3d 1110, 1119 (10th Cir. 2009) (imposing a sentence of probation in a drug trafficking case largely because of the prospect of rehabilitation). Treatment, and consideration of treatment options, are integral to the sentencing analysis under the Sentencing Reform Act. A term of probation with intensive drug treatment, counseling, and job training will provide an immeasurable benefit to Mr. Martinez and serve the goals of deterrence far more effectively than additional

time in custody. *See* Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research, 28-29 (2006) ("Evidence is accumulating from many sources . . . that well-managed, well-targeted programs can reduce participants' probability of reoffending. A wide range of programs, including drug treatment, anger management, cognitive-skills programs . . . and various educational- and vocational-skills programs have been show to reduce reoffending.").

It is worth noting what imprisonment entails. As Human Rights Watch observed in a definitive study of the United States prison system,

> Imprisonment is the most drastic punishment, short of the death penalty, that a government can lawfully impose on an individual. **It should be imposed only as a last resort – that is, it should be used only when no lesser sanction could be justified given the nature of the crime, and even then it only should be imposed for as long as necessary to further the purposes of punishment**.   In the United States, prison is not a last resort, but all too often the first and only resort which lawmakers have required judges to impose for a vast number of crimes. It is imposed on 69 percent of state felony defendants and 87.6 percent of federal defendants. For decades the United States has passed laws that discount other forms of punishment in favor of incarceration—it has been treated as the medicine that cures all ills. But in its embrace of incarceration, the country seems to have forgotten just how severe a punishment it is. Prisoners lose their liberty, autonomy, and the freedom o exercise fully most rights. They are cut off from families, friends, and communities. Children lose their parents to prison, and parents lose their children. In prison, a person's ability to work,

6

express themselves, and engage in activities that promote what human rights law calls the "free and full development of the personality," is severely restricted. In many prisons, the health and safety of prisoners, as well as their dignity and privacy are threatened by overcrowding, harsh measures such as solitary confinement, and poor physical conditions and sanitation, not to mention rape and other forms of violence. Since many US prisons have moved away from providing educational or rehabilitative programs due to fiscal constraints and some policymakers' rejection of rehabilitation as a legitimate aim of punishment, many prisoners emerge from prison with few tools to reintegrate into society, although many do still struggle against the odds to learn and transform themselves, and to contribute to their communities once released. ")

This Court can impose a sufficient punishment on Mr. Martinez short of imprisonment. Ms. Martinez is a young man. He is gainfully employed and rising as a manager in his job. The Court can impose the standard conditions of supervision—all of which involve a significant restriction on liberty—along with other conditions, such as community service.

*Wherefore*, Mr. Martinez, because of his lack of criminal history, no prior custodial sentence, and his background, requests a sentence of 3 years of probation.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
111 Lomas NW, Suite 501
Albuquerque, NM 87102
(505) 346-2489
(505) 346-2494 Fax
aric_elsenheimer@fd.org


*/s/ filed electronically on 12/11/23*
ARIC G. ELSENHEIMER, AFPD
Attorney for Martin Martinez